IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| STATE OF WASHINGTON, | ) | No. 39667-3-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ZANE EUGENE LUMPKIN, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Zane Lumpkin appeals his conviction and sentence for first degree robbery. We generally affirm, but remand for the limited purpose of striking the $500 crime victim penalty assessment from Mr. Lumpkin's judgment and sentence.

FACTS

Timothy Dobb and Aramis Mobley were parked near a McDonalds, eating breakfast inside Mr. Dobb's car when a pickup truck pulled up next to them. A man driving the pickup began yelling and asked Mr. Dobb if he was scouting the neighborhood to commit a crime. Mr. Dobb explained that he was just eating food. The pickup then left.

Soon thereafter, the pickup returned, accompanied by a Cadillac SUV (sport-utility vehicle). The pickup and the SUV blocked Mr. Dobb's car from leaving. Two men got out of the pickup and approached Mr. Dobb's vehicle.[1] As they approached, Mr. Dobb falsely claimed to have a gun. Mr. Dobb testified at trial that "they were like, [w]e have one too. It's loaded." 1 Rep. of Proc. (Apr. 3, 2023) at 88. At some point, Mr. Dobb could see a gun holstered on the waistband of one of the men.

The two men demanded money from Mr. Dobb. When he refused, the man who had been driving the pickup punched Mr. Dobb in the jaw. The two men then took cash and other items from Mr. Dobb's vehicle. During the encounter, which spanned approximately one and one-half minutes, Mr. Dobb was able to get a good look at the man who had been driving the pickup, the same one who punched him in the jaw. At trial, Mr. Dobb provided the following description:

> Q. It was the driver of the truck who punched you in the jaw?
> A. Yes.
> Q. What did the driver look like?
> A. The way I call them, sorry, I call them tweakers, you know, scabs on the face. He had long, greasy, blondish hair. He was white, obviously. A little bit of a beard, not like much. And as far as the clothes, I'm pretty sure he was just wearing a black jacket. I can't remember much of the clothes detail though.

---

[1] According to Mr. Dobb, there were two occupants of the SUV, but they never got out of their vehicle.

*Id*. at 90.

The pickup and the SUV left the scene, traveling in different directions. Mr. Dobb briefly chased after the pickup, but was unable to keep up. He then called law enforcement and reported the assault and robbery.

A little over a week later, Mr. Lumpkin was apprehended after he crashed a Chevy pickup into a power pole. The pickup had been reported as stolen and law enforcement suspected it was the same pickup used during the assault and robbery of Mr. Dobb. The officer who apprehended Mr. Lumpkin assembled a photo montage containing six photos, including one of Mr. Lumpkin. Mr. Dobb reviewed the montage and identified Mr. Lumpkin as his assailant.

Mr. Lumpkin was then arrested and charged with first degree robbery. He exercised his right to a jury trial.

At trial, the State presented testimony consistent with the foregoing facts. During the State's case-in-chief, the lead detective described the steps taken during his investigation. He explained that he had to put together a second photo montage in an effort to identify the individuals who assisted Mr. Lumpkin in the robbery. He testified as follows:

> Q. Okay. Were you given information about the results of the
> [initial] photo montage . . . ?

A. Yes.

Q. Okay. And based upon that information, how did you proceed?

A. With the information at hand, I—for us—obviously with the information I only had one of the suspects identified. I looked to potential people associated with the person identified to see if anybody matched that description.

Unfortunately, at that point in time, also trying to track him down, the best way for us is usually we forward charges, and then, at that point, a warrant is issued for that person, and then, at that point in time, we usually like to have contact.

Unfortunately, I wasn't going to get any further with him because on the day of the incident he had already invoked his counsel, said he didn't want to talk to law enforcement.

*Id.* at 79.

The defense theorized at trial that this was a case of mistaken identification. Mr. Lumpkin testified and denied any involvement in the robbery. He claimed he purchased the Chevy pickup several days after the robbery. The jury convicted Mr. Lumpkin as charged.

## ANALYSIS

Mr. Lumpkin challenges his conviction, arguing his trial attorney provided constitutionally deficient representation. He also challenges two aspects of his sentence. We address each claim in turn.

*Assistance of counsel*

Criminal defendants are guaranteed effective assistance of counsel by our state and federal constitutions. *See* U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. A defendant appealing a conviction on the basis of ineffective assistance of counsel bears the burden of showing both deficient performance and prejudice. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Failure to meet either element precludes relief. *See In re Pers. Restraint of Pleasant*, 21 Wn. App. 2d 320, 326, 509 P.3d 295 (2022).

Mr. Lumpkin argues his trial counsel was ineffective because the attorney did not try to suppress evidence of the photo montage and because counsel did not object to the detective's testimony commenting on his right to silence. Neither claim merits relief.

*Photo montage*

Due process bars the admission of eyewitness identification evidence that "(1) was obtained by an unnecessarily suggestive police procedure and (2) lacks reliability under the totality of the circumstances." *State v. Derri*, 199 Wn.2d 658, 673-74, 511 P.3d 1267 (2022) (citing *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977)). A defendant seeking to exclude evidence of a police-initiated identification procedure has the burden to establish, by a preponderance of the evidence, the procedure was unnecessarily suggestive. *Id.* at 674.

Because defense counsel did not move to suppress evidence of the photo montage, the record is insufficient to determine whether the procedure was unduly suggestive. For example, we do not know the contents of any admonition provided to Mr. Dobb prior to viewing the photo montage. *See id.* at 677. Nor do we have a full record of the description of the assailant that Mr. Dobb provided to law enforcement on the day of the robbery. Thus, we cannot assess whether the photographs chosen for the montage impermissibly drew attention to Mr. Lumpkin. *See id.* at 678.

The evidence presented at trial suggests that Mr. Dobb's identification of Mr. Lumpkin from the photo montage held an aura of reliability. Mr. Dobb had the opportunity to observe his assailant at close range for a fairly significant period of time. He expressed 100 percent certainty at the time he identified Mr. Lumpkin during the photo montage. And the photo montage was conducted less than a month after the robbery.

Based on the current record, we cannot conclude that Mr. Lumpkin's attorney performed deficiently in opting not to file a suppression motion regarding the photo montage. An attorney does not provide deficient performance merely by bringing a motion that would appear to be unsuccessful. *See State v. Grott*, 195 Wn.2d 256, 274,

6

458 P.3d 750 (2020). Mr. Lumpkin has not shown he is entitled to relief on direct review

based on his attorney's failure to try to suppress evidence of the photo montage.

*Comment on right to silence*

Law enforcement witnesses are prohibited from commenting on a defendant's

exercise of the right to silence under the Fifth Amendment to the United States

Constitution. *State v. Romero*, 113 Wn. App. 779, 787, 54 P.3d 1255 (2002). "A comment

on an accused's silence occurs when used to the State's advantage as either substantive

evidence of guilt or to suggest to the jury that the silence was an admission of guilt."

*State v. Lewis*, 130 Wn.2d 700, 707, 927 P.2d 235 (1996). "'[M]ere reference'" to a

defendant's silence does not amount to a comment on the defendant's right to silence

and requires reversal only upon a showing of prejudice. *State v. Burke*, 163 Wn.2d 204,

216, 181 P.3d 1 (2008).

Here, the law enforcement testimony did not amount to an impermissible comment

on Mr. Lumpkin's silence. The State did not intentionally elicit testimony regarding

Mr. Lumpkin's exercise of his constitutional rights. Instead, the detective volunteered

that Mr. Lumpkin had exercised his right to counsel and did not want to speak with

law enforcement during questioning on a second photo montage. This was not

substantive evidence and did not tend to suggest Mr. Lumpkin was guilty of the robbery.

The detective's remark was brief. It was not repeated and it was not referenced by the State in summation or at any other point in trial. Given the detective's testimony amounted to nothing more than a passing remark on the issue of silence, it was not prejudicial and Mr. Lumpkin cannot show that he is entitled to relief based on his trial counsel's failure to object.

*Sentencing issues*

### *Lifetime no-contact order*

Mr. Lumpkin argues the sentencing court did not have statutory authority to impose lifetime no-contact as to the owner of the Chevy pickup. This claim was not preserved during the trial court proceedings. Given it does not purport to involve a constitutional right or the trial court's subject matter jurisdiction, we decline review. *See* RAP 2.5(a).

### *Crime victim penalty assessment*

At sentencing, the court found Mr. Lumpkin was indigent and imposed the then-mandatory $500 crime victim penalty assessment. On appeal, Mr. Lumpkin contends, and the State concedes, that this penalty must be struck. We accept this concession based on recent legislative changes. *See State v. Ellis*, 27 Wn. App. 2d 1, 16-17, 530 P.3d 1048 (2023) (citing LAWS OF 2023, ch. 449, § 1).

CONCLUSION

Mr. Lumpkin's conviction is affirmed. We remand for the limited purpose of striking the $500 crime victim penalty assessment from the judgment and sentence. As this act is ministerial, resentencing is not required.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____
Staab, A.C.J.

_____
Cooney, J.

9